## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JOHN DOE,

       Plaintiff,

v.                                 Case No.  3:22-cv-414-MMH-LLL

PREDATOR CATCHERS, INC.
and ERIC SCHMUTTE,

       Defendants.

_____

# O R D E R

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for a More Definite Statement (Doc. 42; Motion), filed on October 25, 2022. Plaintiff filed a response in opposition to the Motion on November 18, 2022. See Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for a More Definitive Statement (Doc. 55; Response). In the Motion, Defendants assert that the Court should dismiss this case for lack of subject matter jurisdiction. See Motion at 8-9. In addition, Defendants argue that the Complaint is subject to dismissal for failure to state a claim on which relief may be granted. See id. at 10-21. For the reasons that follow, the Court finds that Plaintiff has failed to carry his burden of establishing the existence of subject matter jurisdiction

over this action, and as such, will dismiss the Complaint without prejudice. For that reason, the Court does not address the remainder of Defendants' arguments.

## I.    Background

On April 12, 2022, Plaintiff John Doe initiated this action against Defendants Predator Catchers, Inc. and Eric Schmutte.  See Complaint (Doc. 1).  In the Complaint, Doe brings the following claims: 1) defamation, 2) invasion of privacy, 3) intentional infliction of mental distress, 4) assault, and 5) civil remedy for cyber crime.  Id. ¶¶ 8-11.  According to Doe's allegations in the Complaint, Predator Catchers is a vigilante-style group whose mission is to identify and expose sexual predators on the internet, i.e., individuals seeking to engage in sexual encounters with minors.  See id. ¶¶ 10, 12.  Doe alleges that the group establishes "false profiles on internet dating sites" to "lure responding individuals" into potential "sexual encounters," and then accuses the individuals of "attempting to engage in sexual encounters with minors."  Id. ¶ 12.  Predator Catchers then "expos[es]" these individuals on the internet through various social media platforms.  Id.  It also maintains its own website where it posts reports of its activities for its followers.  Id. ¶ 13.  Schmutte, the founder and president of Predator Catchers, is allegedly "responsible for the planning and coordination of Predator Catchers' activities, and personally directs and participates" in those activities.  Id. ¶ 11.

In March of 2022, Doe had an active dating profile on the "online dating and geosocial networking internet application" known as Tinder.  Id. ¶¶ 14, 16-17.  On March 2, 2022, Tinder notified Doe that he had "matched" with a woman named "Jessie."  Id. ¶ 17.  Doe and "Jessie" exchanged text messages over the next few days in which, according to Doe, "'Jessie was being suggestive in an attempt to entice [Doe] into a sexual encounter, whereas [Doe] was responding with caution to 'Jessie's' suggestive messages."  Id. ¶ 20.  Eventually, "Jessie" invited Doe to her "grandma's house" and he accepted.  Id. ¶ 21.  As alleged in the Complaint, Doe "confirmed with 'Jessie' that she was over the age of eighteen (18) and complied with Tinder's age requirements" before his arrival at the house.  Id. ¶ 23.  Doe also alleges that "Jessie" sent him five photographs of herself and maintains that these photographs "clearly depict someone who is not a minor."  Id. ¶ 22.

Doe alleges that when he arrived at the house to meet "Jessie" he was "greeted at the front door by a female who was clearly an adult."  Id. ¶ 24.  Schmutte and others then confronted Doe with "vulgar, offensive and abusive language" and "accused [Doe] of seeking to have sex with a thirteen (13) year old."  Id.  Schmutte recorded the confrontation and posted it on various internet sites and Doe alleges "upon information and belief," that the recording "has been viewed by several thousand viewers."  Id. ¶¶ 24-26, 29.  According to Doe, the original recording is forty-eight minutes long, over half of which

takes place prior to Doe's arrival at the house, and consists of Schmutte and others discussing "with generous vulgarity" Doe's anticipated arrival.   Id. ¶ 26. At some point on the video, Schmutte allegedly states "his desire to strike [Doe] in the face . . . ."   Id. ¶ 52.   Doe asserts that "[t]oward the end of the 48-minute Recording, Schmutte admits that there was no case against [Doe]."   Id. ¶ 26. According to Doe, Schmutte and Predator Catchers "have now redacted the Recording to thirty-seven (37) minutes, removing many of its most egregious and offensive portions, which evidenced Schmutte's and Predator Catcher's unsuccessful attempt to entrap [Doe] into committing a crime."   Id. ¶ 29.

In addition to the recording, Doe alleges that "Schmutte and Predator Catchers posted a photograph of [Doe] with the caption 'He said he was 38. The decoy was 13.'"   Id. ¶ 30.   According to Doe, the recording and photograph "have both received numerous negative and derisive comments directed to [Doe] including such comments from individuals who are personally known to [Doe]." Id. ¶ 33.   Doe also alleges that the comments include "suggestions of violence against [Doe], including death threats suggestive of, inter alia, shooting [Doe]." Id.   As to damages, Doe asserts that he "has suffered severe mental distress and humiliation and has incurred significant expense in attempting to minimize the adverse impact of Defendants' actions."   Id. ¶ 37; see also id. ¶¶ 49, 60.   Doe makes no effort to quantify his damages other than the conclusory

allegation that "[t]his is an action for damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees where applicable."   Id. ¶ 1; see also id. ¶ 5.

## II.   Applicable Law

"In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." Baltin v. Alaron Trading, Corp., 128 F.3d 1466, 1469 (11th Cir. 1997).   In cases where, as here, the Court's diversity jurisdiction is invoked, see Complaint ¶ 5, a plaintiff must claim, among other things, that the amount in controversy exceeds $75,000. See Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003).   A plaintiff satisfies this requirement if he claims a "a sufficient sum in good faith."   Id. at 807 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)).   And generally, a court can dismiss for failure to satisfy the amount in controversy requirement "only if it is convinced 'to a legal certainty' that the claims of the plaintiff in question will not exceed $75,000 (the current jurisdictional threshold)."   See McIntosh v. Royal Caribbean Cruises, Ltd., 5 F.4th 1309, 1312 (11th Cir. 2021).

As significant to this case, however, "the Red Cab Co. 'legal certainty' test gives way" where a plaintiff invokes diversity jurisdiction based on a claim for indeterminate, unspecified damages.   See McKinnon Motors, 329 F.3d at 807;

see also McIntosh, 5 F.4th at 1312; Fastcase, Inc. v. Lawriter, LLC, 907 F.3d 1335, 1342 (11th Cir. 2018); Doane v. Tele Circuit Network Corp., 852 F. App'x 404, 406 (11th Cir. 2021); Bradley v. Kelly Servs., Inc., 224 F. App'x 893, 895 (11th Cir. 2007).[1]   Damages are indeterminate where a plaintiff makes "no effort to quantify" the damages he seeks.   See Doane, 852 F. App'x 407; see also McKinnon Motors, 329 F.3d at 808 (explaining that the damages sought were indeterminate because plaintiff "did not and has not placed any dollar amount on the various damages it is seeking under its bad faith claim").   This requires more than a general allegation that damages exceed $75,000.   See Fastcase, 907 F.3d at 1339, 1343; Doane, 852 F. App'x at 407; Bradley, 224 F. App'x at 895.   Notably, where damages are indeterminate, "the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum."   See McKinnon Motors, 329 F.3d at 807.   "The additional requirement is 'warranted because there is simply no estimate of damages to which a court may defer.'"   See Fastcase, 907 F.3d at 1342 (citation omitted).

---

[1] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point.   See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Of course, in some cases, "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when 'the complaint does not claim a specific amount of damages.'"   See Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061-62 (11th Cir. 2010) (quoting Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010)); see also McIntosh, 5 F.4th at 1312-1313 (finding that although damages were unspecified, plaintiffs had sufficiently alleged injuries and expenses which, accepted as true, were "sufficient to plead damages that exceed the $75,000 amount-in-controversy requirement").   District courts are permitted "to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether" the amount in controversy is satisfied on the face of the complaint.   Roe, 613 F.3d at 1061-62. Indeed, a court "need not 'suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount.'"   Id. (quoting Pretka, 608 F.3d at 770).   Nevertheless, the Court may not speculate or guess as to the amount in controversy.   See Pretka, 608 F.3d at 752.   "'A conclusory allegation . . . that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the [plaintiff's] burden.'"   See Bradley, 224 F. App'x at 895 (alterations in original) (quoting Leonard v. Enter. Rent a Car, 279 F.3d 967,

972 (11th Cir. 2002)); <u>see also</u> <u>Dibble v. Avrich</u>, No. 14-CIV-61264, 2014 WL 5305468, at *4-6 (S.D. Fla. Oct. 15, 2014).[2]

### III.   Discussion

Upon review of the briefs, both parties appear to believe that the <u>Red Cab Co.</u> "legal certainty" test applies to the jurisdictional question in this case.   <u>See</u> Motion at 8-9; Response at 4-5.   In the Motion, Defendants cite <u>Red Cab Co.</u> and argue that "Plaintiff's conclusory statements generally stating he has been damaged in an amount of at least $75,000.00, without any factual support for same, is insufficient to confer jurisdiction on this Court."   <u>See</u> Motion at 9. Doe argues in Response that "[i]t can hardly be said to a legal certainty that the damages complained by Plaintiff are insufficient to establish subject matter jurisdiction."   <u>See</u> Response at 5.   Because Doe relies on the legal certainty test, he makes no effort to quantify or support his claimed damages allegations with any evidence.   Significantly, the Court has an independent obligation to ensure that subject matter jurisdiction exists in a given case.   <u>See</u> <u>Univ. of S. Ala. v. Am. Tobacco Co.</u>, 168 F.3d 405, 410 (11th Cir. 1999).   As such, despite both parties' reliance on the legal certainty test, the Court must apply the correct legal standard to the analysis.

---

[2] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority.   <u>See</u> <u>Stone v. First Union Corp.</u>, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

Here, Doe makes no effort to quantify the damages he seeks beyond the conclusory allegation that "[t]his is an action for damages in excess of $75,000, exclusive of interest, costs and attorney's fees where applicable." See Complaint ¶ 1.  As such, Doe has pled an unspecified amount of damages, and "bears the burden of proving by a preponderance of the evidence that the claim[s] on which jurisdiction is based exceed[] the jurisdictional minimum." See Fastcase, 907 F.3d at 1342 see also Doane, 852 F. App'x at 407.  In response to Defendants' jurisdictional challenge, Doe does not come forward with additional evidence and instead relies entirely on the allegations in the Complaint.  See Response at 4-5.  Thus, the Court looks to the factual allegations of the Complaint to determine whether it is facially apparent that the amount in controversy is met.

Undoubtedly, the alleged wrongdoing described in the Complaint is disturbing and serious.  However, while Doe includes detailed allegations of the purported wrongful conduct, his allegations regarding the damages he sustained are exceedingly vague. [3]  Doe does not allege any personal or

---

[3] Notably, Doe does not plead in the Complaint or argue in the Response that he intends to seek punitive damages.  As Doe is represented by counsel, the Court declines to make arguments on his behalf.  Absent any indication from Doe that he will seek punitive damages in this case, the Court does not consider such damages in determining whether the amount in controversy is satisfied.  See Bronner ex rel. Am. Stud. Ass'n v. Duggan, 962 F.3d 596, 611-12 (D.C. Cir. 2020) ("Faced with the [plaintiffs'] silence, the district court did not err in failing to assess sua sponte their potential to recover punitive damages.").  Indeed, as with his allegations, Doe's argument on this point is entirely conclusory.  He does not address the damages available in defamation cases or attempt to show that jury verdicts in similar cases

professional injury to his reputation.  <u>See</u> <u>generally</u> Complaint.  Indeed, he does not assert that Defendants or anyone else identified him online in the recording, photograph, internet posts, or comments, and there are no allegations suggesting that he believes someone has otherwise connected him to the incident.[4]  Even so, the Court fully accepts Doe's plausible allegations that he has suffered mental distress and humiliation from Defendants' actions and the existence of the postings.  <u>See</u> Complaint ¶ 37.  But the Court can do no more than speculate about the extent of that distress because there are no <u>factual</u> allegations from which to assess the harm.   For example, Doe does not allege whether the mental distress he suffered impacted his ability to work or socialize, resulted in any physical manifestations of distress, damaged his overall health in any way, or necessitated medical care or medication.  And while Doe asserts that he "has suffered severe mental distress," he does not allege that this distress is permanent or ongoing.  <u>Id.</u>  Similarly, Doe asserts that he has incurred unspecified "significant expense" in attempting to minimize the impact of Defendants' actions but provides no details about the

---

regularly exceed $75,000.

[4] Although Doe alleges that "individuals who are personally known" to him have commented on the video, he does not assert that any of these individuals have expressed, either online or to him personally, that they recognized his involvement in the video.  <u>See</u> Complaint ¶ 33.

actions he took from which the Court could quantify the "significant expense" involved.   See id.

Although Doe's burden is not onerous, it does require more than the exceedingly vague assertions of harm set forth in the Complaint.   See Dibble, 2014 WL 5305468, at *6-7; see also Szymkowicz v. Frisch, No. 19-3329 (BAH), 2020 WL 4432240, at *6-7 (D.D.C. July 31, 2020); compare Gardner v. Mgmt. & Training Corp., No. 4:14cv284-RH/CAS, 2014 WL 3039335, at *2 (N.D. Fla. July 3, 2014) (denying motion to remand defamation claim where plaintiff alleged lost income, continuing damages, and an intent to seek punitive damages); Dibble v. Avrich, No. 14-CIV-61264, 2014 WL 6632629, at *3-5 (S.D. Fla. Nov. 21, 2014) (finding allegations in plaintiff's amended defamation complaint sufficient to support amount in controversy where plaintiff included factual allegations relevant to reputational harm and "damages related to a 'stress disorder' and his 'health and well-being'").   Because the Court cannot discern from the face of the Complaint whether the amount in controversy is met, and because Doe failed to offer any evidence supporting the amount in controversy in response to Defendants' jurisdictional challenge, the Court finds that it lacks subject matter jurisdiction over this action.   In light of the foregoing, the Court will grant the Motion and dismiss the Complaint without prejudice for lack of subject matter jurisdiction.   Nevertheless, given Defendants' failure to raise the correct legal standards, the Court finds it appropriate to provide Doe with

<u>one</u> opportunity to amend his Complaint so that he can attempt to establish the Court's subject matter jurisdiction over this action.

Accordingly, it is

**ORDERED:**

1. Defendants' Motion to Dismiss Plaintiff's Complaint, or in the Alternative, for a More Definite Statement (Doc. 42) is **GRANTED** to the extent the claims raised in the Complaint are **DISMISSED without prejudice** for lack of subject matter jurisdiction. Otherwise, the Motion is **DENIED**.

2. Doe shall have up to and including **July 14, 2023**, to file an amended complaint in this action.   Absent the filing an amended complaint by that date, the Court will direct the Clerk of Court to enter judgment and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of June, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record