UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN DOE, an individual          CASE NO. 3:22-cv-00414-MMH-LLL

      Plaintiff,

v.

PREDATOR CATCHERS, INC.,
a foreign corporation and
ERIC SCHMUTTE, an individual,

      Defendants.

_____/

### PLAINTIFF'S MOTION FOR SANCTIONS UNDER RULE 37(e) FOR DEFENDANTS' FAILURE TO PRESERVE ELECTRONICALLY STORED INFORMATION

Plaintiff, John Doe, through his undersigned counsel and pursuant to Rule 37(e), Fed. R. Civ. P., respectfully moves this Court for sanctions against Defendants based on their failure to preserve electronically stored information, and in support of this motion, states as follows:

### BRIEF STATUS OF THE CASE

Plaintiff has sued Defendants for defamation, defamation by implication, and other causes of action. Depositions of Defendant Schmutte and other individuals affiliated with Defendants were taken, and the deposition of Plaintiff was taken. Defendants filed a Motion for Summary Judgment (the "**MSJ**"), and Plaintiff filed its Response in Opposition to the Defendants' MSJ (the "**Response to the MSJ**").

## FACTUAL SUMMARY

Plaintiff is claiming damages against Defendants for defamation, invasion of privacy, intentional infliction of mental distress, and civil remedy for cyber crime. Plaintiff's claims arise from what began as a series of text communications on Tinder, an adult dating site, between Plaintiff and an individual identified as "Jessie" in early March 2022. The communications were predicated on profiles of each of Plaintiff and "Jessie" listed on Tinder. The communications between Plaintiff and "Jessie" ultimately led to the encounter and confrontation between Plaintiff, Defendant Schmutte and associates of Defendant Predator Catchers, further resulting in Defendants' posting on the internet the false declaration that Plaintiff was seeking a liaison with a thirteen (13) year old girl.

The profile of "Jessie" is at the heart of this matter. There is no dispute that Tinder is an adult site and its rules require that only adults may submit their profiles. In this case, Defendant Schmutte created the "Jessie" profile (Schmutte Depo, p. 49) using a decoy phone number from a temporary phone (Schmutte Depo, p. 56). Defendant Schmutte did not recall the date of the "Jessie" profile creation but noted that it was "a while ago" (Schmutte Depo, p. 50 and 51). The "Jessie" profile on Tinder indicated that "Jessie" was over the age of eighteen (18) and did not indicate that she was younger than eighteen (18) or a minor or child in any way (Schmutte Depo, p. 64 and 65). Specifically, the profile stated "Jessie" was nineteen years old (Doe Depo, p. 88, 140, 146 and 229). Defendant Schmutte acknowledged that anyone

2

looking at the profile would think that "Jessie" was over eighteen (18) (Schmutte Depo, p. 65).

The photographs in the "Jessie" Tinder profile were of a real woman named Alexis Thomas (Schmutte Depo, p. 27-28; Nolley Depo, p. 47). When Alexis Thomas provided the photographs that were used in creating the decoy profile, she was "around twenty" (Schmutte Depo, p. 53).

During the March 5, 2022, encounter at "grandma's" house on Roxie Street in Mayport, Florida between Plaintiff, Defendant Schmutte and the Predator Catcher's associates Brooklyn Beeman and Samantha Syrus, Plaintiff denied he was there to see a minor, advised that he would be calling the police, and began to record cell phone video himself for evidence to show the police.

In one of the defamatory video recordings that Defendants published, Defendant Schmutte acknowledged that the communications between "Jessie" and Plaintiff, and the encounter itself, failed to establish that the Plaintiff solicited a minor, and conceded that "if the cops got involved, he [Plaintiff] wouldn't get charged."

Plaintiff initially advised the Atlantic Beach Police Department about the encounter and Defendants' defamatory publications on or about March 9, 2022. However, because of jurisdictional issues, he was referred to the Jacksonville Sheriff's Office and filed a complaint there on March 10, 2022.

Defendant Schmutte has acknowledged that Predator Catchers has been threatened "a few times" with lawsuits over their sting operation (Schmutte Depo, p. 91). Schmutte also conceded that Predator Catchers is referred to as vigilantes by some

3

law enforcement and prosecutors. He specifically acknowledged that the prosecutors in his home county of Marion, Indiana would not prosecute their cases (Schmutte Depo, p. 89-90).

Sometime prior to March 11, 2022, Defendants chose to remove the Tinder profile from the internet, and chose not to print or save a copy of the Tinder profile. Defendants furthermore chose not to reinstate the Tinder profile, or request that Tinder provide a copy of the Tinder profile, after receiving the Litigation Hold Letter.

On March 11, 2022, counsel for Plaintiff delivered a formal and clear letter to Defendants (the "**Litigation Hold Letter**" attached hereto as *Exhibit "A"*), which included the following demand, related to events leading up to and after the March 4, 2022 confrontation and defamatory publications that are the subject of this suit:

> **By this letter, our client demands that you preserve** all documents, tangible things, and all electronically stored information ("**ESI**") potentially relevant to any issues in the above-identified matter, including all internal correspondence or policies relating to the identification and pursuit of Mr. [DOE], further **including the Tinder profile you established and used of the fictional woman named "Jessie" which has since been deleted**.

Litigation Hold Letter (emphasis added)

As explained in Plaintiff's Response to the MSJ, the Defendants defamed Plaintiff by publicizing their false claim that Plaintiff intended to meet with and engage in sexual activity with a minor. Plaintiff did not intend, or express an intent, to act in such manner. The content of the "Jessie" Tinder profile is therefore critical information to demonstrate with whom Plaintiff was communicating – a minor or an adult.

4

The Court should find that Plaintiff is prejudiced from the loss of the Tinder "Jessie" profile, and should order measures to cure the prejudice pursuant to Rule 37(e)(1).

As well, or alternatively, the Court should find that Defendants acted with the intent to deprive Plaintiff of the Tinder profile's use in the litigation, and instruct the jury that it must presume the Tinder profile was unfavorable to Defendants, pursuant to Rule 37(e)(2).

## ARGUMENT

### I. Legal Standard.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 669 (2d Cir. 1999)). The spoliation of evidence is taken seriously by courts and "[a]side from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence." *E.g., Herzig v. Arkansas Foundation for Medical Care, Inc.*, No. 2:18-CV-02101, 2019 WL 2870106, *1 (July 3, 2019, W.D. Ark.) (citing *United Med. Supply Co., Inc. v. United States*, 77 Fed. Cl. 257, 258 (Fed. Cl. 2007).

The spoliation of electronically stored information ("ESI") is governed by Rule 37(e) of the Federal Rules of Civil Procedure. Rule 37(e) was amended, effective as of December 1, 2015, and courts now look to the newly amended Rule when considering a claim of spoliation involving ESI. *See Living Color Enters. v. New Era Aquaculture Ltd.*,

5

No. 14-cv-62216-MARRA/MATTHEWMAN, 2016 U.S. Dist. LEXIS 39113, *10

(S.D. Fla. Mar. 22, 2016). The Rule seeks to balance the centrality of electronic

information to modern litigation with the almost always substantial (and sometimes

unnecessary) costs of preserving electronic data. *Skansa USA Civil Southeast Inc. v.*

*Bagelheads, Inc.*, 75 F.4th 1290, 1311 (11th Cir. 2023).

The new version of Rule 37(e) provides as follows:

> **(e) Failure to Preserve Electronically Stored Information**. If
> electronically stored information that should have been preserved
> in the anticipation or conduct of litigation is lost because a party
> failed to take reasonable steps to preserve it, and it cannot be
> restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the
> information, may order measures no greater than necessary
> to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to
> deprive another party of the information's use in the litigation
> may:
>
> (A) presume that the lost information was unfavorable to the
> party;
>
> (B) instruct the jury that it may or must presume the
> information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). According to the Advisory Committee Notes, Rule 37(e)

"authorizes and specifies measures a court may employ if information that should

have been preserved is lost, and specifies the findings necessary to justify the

measures." Fed. R. Civ. P. 37(e) Adv. Comm. Notes, 2015 amendment. "It therefore

forecloses reliance on inherent authority or state law to determine when certain

measures should be used." *Id.*

Pursuant to Rule 37(e), four threshold requirements must be met before a court

may impose sanctions: (1) the information sought constitutes ESI; (2) the ESI should

6

have been preserved in anticipation of litigation; (3) the ESI is lost because a party failed to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced through additional discovery. *See* Fed. R. Civ. P. 37(e); *Easterwood v. Carnival Corporation*, No. 19-cv-22932-BLOOM/Louis, 2020 WL 6781742, *4 (Nov. 18, 2020, S.D. Fla.). If these threshold elements are satisfied, Rule 37(e) next establishes two different avenues parties can take to demonstrate that sanctions are appropriate. The first avenue, Rule 37(e)(1), requires a court to make a finding of prejudice before sanctions may be ordered to cure the prejudice. The second avenue, Rule 37(e)(2), allows a court to impose harsh sanctions if it finds that a party acted with the intent to deprive the opposing party of the use of the ESI at issue. *Id.*

A district court also has broad discretion in imposing sanctions as part of its "inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Ala. Aircraft Indus. V. Boeing Co.*, 319 F.R.D. 730, 739 (N.D. Ala. 2017) (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)). Upon a finding of spoliation of evidence, courts have imposed various sanctions, including: "(1) dismissing the case; (2) excluding expert testimony; or (3) issuing a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV-WILLIAMS/SIMONTON, 2018 U.S. Dist. LEXI 135420, *7 (Aug. 8, 2018, S.D. Fla.).

## II.   The Threshold Requirements For Rule 37(e) Have Been Met.

All four requirements for Rule 37(e) have been satisfied, as discussed specifically *infra*.

### 1.    The Information Sought Constitutes ESI.

First and foremost, the information destroyed was a combination of text purportedly written and published by, and photographs purportedly of and published by, the decoy "Jessie" (Schmutte Depo, p. 64-65). We now know that Defendants wrote the text and uploaded photographs of an *adult* woman affiliated with Defendants onto Defendants' controlled Tinder page as part of Defendants' regular organizational practices (Schmutte Depo, p. 64-65). The Tinder profile constitutes ESI, and thus Rule 37(e) is wholly applicable.

Although not addressing Tinder by name in 2015, the Advisory Committee Notes included social media as a form of client data for counsel to become familiar with as part of ESI preservation efforts – the implication is that social media can be ESI just like traditional e-mail ESI.

> Another factor in evaluating the reasonableness of preservation efforts is proportionality. The court should be sensitive to party resources; aggressive preservation efforts can be extremely costly, and parties (including governmental parties) may have limited staff and resources to devote to those efforts. A party may act reasonably by choosing a less costly form of information preservation, if it is substantially as effective as more costly forms. It is important that counsel become familiar with their clients' information systems and digital data -- **including social media** -- to address these issues. A party urging that preservation requests are disproportionate may need to provide specifics about these matters in order to enable meaningful discussion of the appropriate preservation regime.
>
> Advisory Committee Notes, Rule 37(e), Fed. R. Civ. P. (2015) (emphasis added)

Defendants' counsel has referred to Tinder as social media (Schmutte Depo, p. 67-68).

Courts consider social media posts to be ESI. *See Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 478-79 (D. Ariz. 2020), aff'd, No. 20-17210, 2022 WL 259937 (9th Cir. Jan. 27, 2022) (dismissing former prisoner's civil rights action against city due to deletion of social media posts); *Thurmond v. Bowman*, 199 F. Supp. 3d 686, 690 (W.D.N.Y. 2016) (considering sanctions against prospective rental tenant in Fair Housing Act suit who did not preserve her social media posts).

Here, the Tinder profile digitally conveyed information to the Plaintiff, and the Defendants publicized that Plaintiff believed he was viewing the Tinder profile of a 13 year old girl. There is no reason to think that the medium – a dating or social media website – should cause such information to be treated differently, for preservation purposes, than an email or text message.

Thus, the first requirement is satisfied.

## 2.    The ESI Should Have Been Preserved, But it Was Not.

In the Eleventh Circuit, the test regarding whether there was a duty to preserve evidence is whether litigation was "pending or reasonably foreseeable" when the spoliation occurred. *Alabama Aircraft Industries, Inc.,* 319 F.R.D. at 740. The duty to preserve evidence is viewed from the perspective of the party who has control over the evidence and is "triggered not only when litigation is pending but also when it is reasonably foreseeable to that party." *Id;* citing *Graff*, 310 Fed. App'x. at 301. It is not necessary that a party anticipate the specific type of litigation at issue. *See Title Capital*

*Mgmt., LLC v. Progress Residential, LLC*, 2017 U.S. Dist. LEXIS 218624, at *12-13 (S.D. Fla. Sept. 29, 2017) (explaining "Rule 37 does not require the exacting prescience Plaintiff argues he must have concerning the exact *type* of litigation a party anticipates, especially when the party advancing such an argument is the alleged spoliator. To read such a requirement into the Rule would allow misbehaving parties to escape their obligations to preserve evidence through the careful splitting of hairs.") (emphasis in original). It is sufficient that there was a reasonable expectation of litigation, period.

Before communicating with Plaintiff, the Defendants here have been "threatened a few times" with litigation related to their "sting" operations but are "not sure the amount of times we've been threatened" (Schmutte Depo, p. 91).[1] Defendants acknowledge their tactics are based on lies (Schmutte Depo, p. 64). Defendants concede that some law enforcement and prosecutors consider Defendants to be a "vigilante group," and that their local prosecutor in Marion County, Indiana will not pursue cases in which they are involved (Schmutte Depo, p. 89-90).

After the encounter with Plaintiff, Schmutte was in contact with Plaintiff, threatening Plaintiff that Defendants would expand their publications if Plaintiff continued to object to their publications and if Plaintiff continued to provide

---

[1] While not part of the record in this case, Defendants may have been aware of lawsuits similar to this one, such as two filed against NBC, after its airing of episodes of "To Catch a Predator", and one against another 'predator-hunting' group called KTS Predator Hunters.
https://www.reuters.com/article/idUSN26477217/  *Conradt ex rel. Conradt v. NBC Universal, Inc.*, 536 F. Supp. 2d 380 (S.D.N.Y. 2008).
https://www.hollywoodreporter.com/business/business-news/to-catch-predator-lawsuit-nbc-defend-255218/  *Tiwari v. NBC Universal, Inc.*, No. C-08-3988 EMC (N.D. Cal. Oct. 25, 2011).
https://www.bnd.com/news/local/article246480085.html
https://www.nbcnews.com/news/us-news/predator-hunter-leader-indicted-after-alleged-sting-operation-trap-supposed-n1268910

information about Defendants to law enforcement (See Affidavit of John Doe, attached hereto as ***Exhibit "B"***).

In consideration of those factors, litigation was reasonably foreseeable and most probably anticipated. Moreover, the Litigation Hold Letter specifically demanded the Tinder profile be preserved.

Thus, the second requirement is satisfied.

### 3. The ESI is Lost Because the Defendants Failed to Take Reasonable Steps to Preserve It.

Defendants took no efforts to preserve the ESI and made no effort to preserve or retrieve the profile. In fact, they did the opposite, by deleting the Tinder profile. They offer no explanation.

Plaintiff need not show that Defendants had baith faith and intended to deprive Plaintiff of the Tinder profile. Neither must Plaintiff show that Defendant engaged in a particular degree of negligence or recklessness. *See Williford v. Carnival Corp.*, No. 17-21992-CIV, 2019 WL 2269155, at *9 (S.D. Fla. May 28, 2019) (analyzing, and concluding, that the defendants failed to take reasonable efforts to preserve x-ray results).

The rule recognizes that reasonable steps to preserve ESI suffice, and it does not call for perfection; as well, courts should be sensitive to party resources, as preservation efforts can be costly. *See* Advisory Committee Notes, Rule 37(e), Fed. R. Civ. P. (2015). Here, Defendants affirmatively deleted the ESI, even though the preservation through Tinder was free and takes no effort.

Thus, the third requirement is satisfied.

## 4.   The ESI Cannot be Restored or Replaced Through Additional Discovery.

Like in the case of *Williford* and the missing x-ray results, the deleted Tinder profile here cannot be restored or replaced through additional discovery. The exact contents of the x-ray, as in *Williford*, the Tinder profile, as here, are important; a general perception from memory may be useful but is not sufficient. Here, specifically, there may have been features of the Tinder profile that confirm Plaintiff's intentions as to whom he believed he was communicating with or features that Plaintiff has forgotten about, which would support Plaintiff's position that Defendants' publications were false. In short, the fact finder in this case is deprived of evidence that would help it determine whether or not Plaintiff believed he was communicating with a minor.

Thus, the fourth and final requirement is satisfied.

## III.   The Plaintiff is Prejudiced and the Court Should Order Measures to Cure the Prejudice.

### 1.   Absence of Tinder profile prejudices Plaintiff's ability to show that Defendants' statements about Plaintiff's beliefs were false.

As expounded upon in Plaintiff's Response to the MSJ, the Defendants ignored and misrepresented Plaintiff's beliefs, by directly stating at times, and implying at others, that Plaintiff intended to have sexual contact with someone he believed was a minor whom he met on Tinder via her Tinder profile. Plaintiff's communications with "Jessie" were based on his belief that "she" was over the age of eighteen (18) (Affidavit of John Doe). The Tinder profile that Defendants destroyed would help rebut

12

Defendants' claim in this suit and its pre-suit publications that Plaintiff believed he was communicating with a minor. Representations about her age (it will be at least 18 since that is required for Tinder profiles), pictures of herself and perhaps her lifestyle and daily activities, all typical of a Tinder profile. The absence of the Tinder profile will make it more difficult for members of the jury to understand what Plaintiff believed about the person behind the Tinder profile, including that person's age.

Therefore, Plaintiff requests that the Court "order measures no greater than necessary to cure the prejudice" pursuant to Rule 37(e)(1), Fed. R. Civ. P.

## 2.   The Court should order measures to cure the prejudice Plaintiff faces by Defendants destroying the Tinder profile.

Even if this Court determines that Defendants did not act with intent or bad faith, this does not preclude Plaintiff from seeking remedies against the Defendants. "Rule 37(e) also permits a court to impose measures other than the severe ones listed in (e)(2) without a finding that the party responsible for the failure to preserve had the requisite intent." *U.S. EEOC v. GMRI, Inc*., No. 15-20561-CIV-LENARD/GOODMAN, 2017 U.S. Dist. LEXIS 181011, \*77 (Nov. 1, 2017, S.D. Fla.). For instance, a court may allow the "parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision." *Id*.

In *Williford*, after determining the plaintiff was prejudiced due to the defendant having lost the x-ray evidence, the court allowed the plaintiff to "present evidence so that the jury understands the facts (or lack of facts) surrounding Carnival's failure to

provide the x-rays." *Williford* at 12. Applied here, Plaintiff requests that, among other

things, such an order would allow Plaintiff to explain to the jury that the Defendants

chose to (i) delete the Tinder profile, (ii) not save a printed or digital copy of the Tinder

profile, (iii) not request that Tinder send them a copy of the Tinder profile, and (iv)

disregard the Litigation Hold Letter and Rule 37, Fed. R. Civ. P.

Plaintiff also requests that Defendants not be permitted to dispute Plaintiff's

recollection of the contents of the Tinder profile.[2]

In addition to the foregoing, Plaintiff requests that the Court order any

additional measures it deems appropriate to cure the prejudice pursuant to Rule

37(e)(1), Fed. R. Civ. P.

## IV.    Defendants acted with Intent or Bad Faith and the Court Should Instruct the Jury that it Must Presume the Tinder Profile was Unfavorable to Defendants.

### 1.    Defendants Acted With Intent or Bad Faith.

Under Rule 37(e)(2), the Court is authorized to enter severe sanctions for

spoliation when the party who destroyed the evidence "acted with the intent to deprive

another party of the information's use in litigation." For purposes of evaluating

whether a party acted in bad faith (i.e., with intent to deprive), a court can look to see

if there is direct evidence of bad faith or circumstantial evidence of bad faith. *Lebron*,

2018 U.S. Dist. LEXIS 135420, at *18. Circumstantial evidence of bad faith exists

where: "(1) evidence once existed that could fairly be supposed to have been material

---

[2] Plaintiff will consent to Defendants disputing *conclusions* that Plaintiff draws from his memory of the Tinder profile, but not the underlying memories of the content of the Tinder profile.

to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator." *Id.*, at \*18, citing *Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 U.S. Dist. LEXIS 74307, 2010 WL 2927962, at \*2 (S.D. Fla. July 23, 2010)(citing *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV, 2009 U.S. Dist. LEXIS 111659, 2009 WL 3823390, at \*16 (S.D. Fla. Nov. 16, 2009).

Defendants concede that anybody viewing the Tinder profile would think the person in the profile was over the age of 18 (Schmutte Depo, p. 65).

Defendants' intent to deprive Plaintiff of the use of the ESI in litigation is obvious from the circumstances of the destruction.

## 2. The Court Should Instruct the Jury that it Must Presume the Tinder Profile was Unfavorable to Defendants.

Given the Defendants' bad faith (or intent to deprive), as set forth above, Plaintiff requests that the Court instruct the jury that it must presume the Tinder profile was unfavorable to Defendants and contained information that corroborates Plaintiff's position that Plaintiff did not believe he was communicating with a minor or intending to have sexual contact with a minor.

## CONCLUSION

**WHEREFORE**, Defendants respectfully request that the Court issue sanctions against the Defendants for the destruction of the ESI, in the forms described in this motion, including in the form of an order(s) that will cure the prejudice caused by the

destruction of the ESI, and in the form of a jury instruction regarding what it must presume about the Tinder profile and the effect it would have upon the jury, and for such other further relief as this Court deems just and proper.

## Local Rule 3.01(g) Certification

Undersigned counsel has communicated with counsel for Defendants by email in an attempt to confer regarding this issue. While Defendants have not responded, it may be assumed that they oppose the motion.

Respectfully submitted this 28th day of May, 2024.

GRAYROBINSON, P.A.

By:___/s/ S. Grier Wells_____
S. Grier Wells, Esq.
Florida Bar No. 203238
50 N. Laura Street, Suite 1100
Jacksonville, Florida 32202
Telephone: (904) 598-9929
grier.wells@gray-robinson.com
barbara.rude@gray-robinson.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of May 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Brandon C. Meadows, Esq. and Theresa Carli Pontieri, Esq., Attorneys for Defendants.

/s/ S. Grier Wells, Esq._____
Attorney

/13312/1#60516358 v7

16